IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-HC-2070-D

| | |
|---|---|
| LEE BENTLEY FARKAS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| J.F. ANDREWS, ) | |
| ) | |
| Respondent. ) | |

On March 29, 2017, Lee Bentley Farkas ("Farkas" or "petitioner"), proceeding pro se, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 [D.E. 1], together with a number of exhibits [D.E. 1-1]. On April 10, 2017, Farkas filed additional exhibits in support of his petition [D.E. 4-1]. This court now conducts its preliminary review under 28 U.S.C. § 2243 and dismisses Farkas's petition.

Before analyzing the merits of the petition, the court briefly recites the crime which produced Farkas's conviction.

> The Government presented evidence at trial that amply justified the jury in finding the following facts. Farkas and his co-conspirators engaged in a multi-stage fraud scheme between 2002 and 2009, while Farkas was chairman and principal owner of TBW, a mortgage lending company based in Ocala, Florida and with offices in seven states. TBW originated and serviced residential mortgage loans and sold them, either individually, pooled, or as part of a mortgage-backed security, to third-party investors and commercial financial institutions in the secondary mortgage market. To fund the loans it originated, TBW relied on advances from various warehouse banks and purchase facilities, which were to be repaid from the proceeds of TBW's sales to investors. TBW received short-term, secured funding from Colonial Bank, a subsidiary of Alabama-based Colonial BancGroup, and in particular Colonial Bank's Mortgage Warehouse Lending Division ("MWLD").
>
> Between 2002 and 2003, Farkas and his co-conspirators engaged in a scheme to disguise overdrafts of TBW's master advance account held at Colonial Bank by

"sweeping" funds from TBW's investor funding account, which was also held at Colonial Bank and represented proceeds from sales of loans to investors in the secondary market, into and out of the master advance account. As a result of this sweeping scheme, Colonial Bank's daily reports did not show the overdrafts. Farkas's coconspirators included Ray Bowman, president of TBW, Cathie Kissick, head of the MWLD at Colonial Bank, and Teresa Kelly, a MWLD operations supervisor.

As the deficit in TBW's assets with Colonial Bank grew to well over $100 million, Farkas and his co-conspirators initiated more sophisticated schemes, including "Plan B." Under Plan B, they caused TBW to sell sham mortgage loans and pools of loans to Colonial Bank. These loans and pools of loans either did not exist or had already been sold to investors; accordingly, they were worthless or had significantly impaired value. Colonial Bank held approximately $250 million in Plan B individual loans on its books by mid-2005, and by August 2009, Colonial Bank held approximately $500 million in Plan B pools of loans. As a result, Colonial BancGroup significantly overstated the value of its assets in its quarterly and annual reports to the United States Securities and Exchange Commission.

Relatedly, in furtherance of the scheme, Farkas created Ocala Funding, a subsidiary of TBW that issued commercial paper to investors in return for cash, which in turn was used to fund mortgage loans at TBW. Farkas and his co-conspirators overstated by hundreds of millions of dollars the actual value of the collateral backing the commercial paper and underreported Ocala Funding's liabilities, ultimately resulting in a shortfall of more than $1.5 billion. In the final stage of the scheme, Farkas and his co-conspirators attempted to fraudulently obtain $553 million for Colonial BancGroup, Colonial Bank's holding company, from the Troubled Asset Relief Program, a program that Congress created to rescue distressed financial institutions.

On June 10, 2010, a grand jury in the Eastern District of Virginia returned a sixteen-count indictment against Farkas including, among other charges, bank and wire fraud in violation of 18 U.S.C. §§ 1344 and 1343, respectively, and conspiracy to commit bank and wire fraud in violation of 18 U.S.C. § 1349. The indictment included a forfeiture provision and provided notice that, if necessary, the Government would seek forfeiture of substitute assets pursuant to 21 U.S.C. § 853(p). The following day, the district court entered a restraining order enjoining the sale or transfer of Farkas's assets pursuant to 21 U.S.C. § 853(e)(1)(A).

At his arraignment on July 2, 2010, Farkas appeared with Gerald H. Houlihan, Esq., a Florida-based attorney, and Jeffrey Harris, Esq., his would-be local counsel, neither of whom had entered an appearance or been retained. Houlihan explained that, as Farkas's assets had been frozen and coverage under the TBW Directors & Officers insurance policy ("D&O policy") was in dispute, Farkas hoped to negotiate a carve-out from seized assets for attorneys' fees. The district court

> allowed Houlihan and Harris to enter a limited appearance, arraigned Farkas, accepted his Speedy Trial Act waiver, and set a trial date of November 1, 2010. In mid-July, Houlihan and Harris notified the court that a bankruptcy hearing concerning the D&O policy was scheduled for July 16, 2010, and that negotiations with the Government regarding the possibility of a carve-out from assets frozen under the restraining order were also ongoing. When Farkas had not resolved his representation issues as of August 10, 2010, the district court appointed William B. Cummings, Esq. to represent him under the Criminal Justice Act, 18 U.S.C. § 3006(A). Farkas objected to the appointment of counsel. The court responded that its appointment of counsel did not foreclose Farkas from retaining counsel, but that "at this point we have to get this case moving."
>
> On August 26, 2010, Farkas moved to transfer venue to the Middle District of Florida pursuant to Federal Rule of Criminal Procedure 21(b). The Government opposed the motion and the district court denied Farkas's request orally and by written opinion. Farkas also moved for a continuance on four separate occasions. The court granted Farkas's first and second motions, which were unopposed by the Government, but denied his third and fourth requests.
>
> Following a nine-day jury trial, Farkas was found guilty on fourteen counts, including conspiracy to commit bank fraud, wire fraud, and securities fraud, in violation of 18 U.S.C. § 1349 (Count 1); six counts of bank fraud, in violation of 18 U.S.C. §§ 1344 and 2 (Counts 2–7); four counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2 (Counts 8–11); and three counts of securities fraud, in violation of 18 U.S.C. §§ 1348 and 2 (Counts 14–16). The district court sentenced Farkas to 30 years of imprisonment, to be followed by three years of supervised release. Following sentencing, the court granted the Government's preliminary motion for forfeiture and ordered Farkas to forfeit $38,541,209, representing the value of property constituting or derived from proceeds he obtained directly or indirectly as a result of his offenses of conviction. The court also held Farkas jointly and severally liable for restitution payments totaling $3,507,743,557.

United States v. Farkas, 474 F. App'x 349, 351–53 (4th Cir. 2012) (unpublished) (footnotes and

internal citation omitted); see Pet. 2–3, 7–14; Exs. [D.E. 1-1] 7, 9–41.

> On September 19, 2013, . . . Farkas . . . proceeding pro se timely filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Original Motion"). Farkas later retained counsel, and on October 8, 2013, they filed an Amended Motion Under 28 U.S.C. § 2255 to Vacate and Set Aside Sentence ("Amended Motion"), which asserted the same grounds for relief as Farkas had in his original motion.

United States v. Farkas, No. 1:10CR00200 LMB, 2014 WL 3615851, at *1 (E.D. Va. July 18, 2014)

3

(unpublished); see Pet. 3; Exs. [D.E. 4-1] 15–31, 72–124. On July 18, 2014, the court dismissed the motion. Farkas, 2014 WL 3615851, at *16; see Exs. [D.E. 4-1] 126–167. Farkas appealed, and on February 5, 2015, the United States Court of Appeals for the Fourth Circuit dismissed the appeal. United States v. Farkas, 592 F. App'x 211, 212 (4th Cir. 2015) (per curiam) (unpublished); see Pet. 2–3. On October 5, 2015, the United States Supreme Court denied Farkas's petition for a writ of certiorari. Farkas v. United States, 136 S. Ct. 243 (2015). On February 9, 2017, pursuant to 28 U.S.C. § 2244, Farkas sought authorization from the Fourth Circuit to file a successive habeas application. See Exs. [D.E. 4-1] 1–11. On February 22, 2017, the Fourth Circuit denied the motion. See id.

In his section 2241 petition, Farkas contends that under a Luis v. United States, 136 S. Ct. 1083 (2016), he was denied his Sixth Amendment right to "counsel of his choice." Pet. 18. Farkas "requests that he be immediately released from custody where he is being unconstitutionally detained; that his sentence and conviction be reversed and vacated." Id. 19.

The court may not consider a section 2241 motion challenging the legality of Farkas's conviction and sentence unless "the remedy by [section 2255] motion is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e) (the "savings clause"); see In re Vial, 115 F.3d 1192, 1194 (4th Cir. 1997) (en banc). Section 2255 is inadequate or ineffective to test the legality of a conviction or sentence when three conditions exist:

> (1) at the time of conviction, settled law ... established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first [section] 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of [section] 2255 because the new rule is not one of constitutional law.

In re Jones, 226 F.3d 328, 333–34 (4th Cir. 2000) (per curiam). If a section 2241 petition does not fall within the scope of section 2255(e)'s savings clause, the district court must dismiss the

4

"unauthorized habeas motion ... for lack of jurisdiction." Rice v. Rivera, 617 F.3d 802, 807 (4th Cir. 2010) (per curiam).

Luis does not apply retroactively on collateral review. See Valencia-Trujillo v. United States, No. 8:02-CR-329-T-17EAJ, 2017 WL 3336491, at *8 (M.D. Fla. Aug. 4, 2017) (unpublished); Clark v. Harmon, No. 3:17-CV-670-B, 2017 WL 2493271, at *2 (N.D. Tex. May 10, 2017) (unpublished); Noel v. United States, No. 1:09-CR-57-RLV-1, 2017 WL 548985, at *3 (W.D.N.C. Feb. 8, 2017) (unpublished), appeal dismissed, 692 F.App'x 128, 2017 WL 2712877 (4th Cir. June 23, 2017) (per curiam) (unpublished). Moreover, section 2255 is not rendered inadequate or ineffective merely because a petitioner is procedurally barred from filing a section 2255 motion. Vial, 115 F.3d at 1194 n.5. Thus, Farkas cannot demonstrate that section 2255 is inadequate or ineffective to test the legality of his detention. Therefore, the court dismisses the petition for lack of jurisdiction.

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court determines that reasonable jurists would not find the court's treatment of any of Farkas's claims debatable or wrong, and none of the issues deserve encouragement to proceed further. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000). Accordingly, the court denies a certificate of appealability.

In sum, the court DISMISSES Farkas's section 2241 petition for a writ of habeas corpus [D.E. 1] and DENIES a certificate of appealability. The clerk shall close the case.

SO ORDERED. This 6 day of October 2017.

                                                          JAMES C. DEVER III
                                                         Chief United States District Judge